FILED

2013 Aug-15  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KARATIA PICKENS and** | } | |
| **FREDRICK PICKENS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **CASE NO. 2:12-cv-1652-SLB** |
| **v.** | } | |
| | } | |
| **LIBERTY MUTUAL** | } | |
| **INSURANCE COMPANY,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is currently before the court on Defendant Liberty Mutual Insurance Company's Motion for Summary Judgment. (Doc. 9.)[1] In their Complaint, plaintiffs Karatia Pickens and Fredrick Pickens (the "Pickens") assert a claim for breach of contract against defendant Liberty Mutual Insurance Company ("Liberty"),[2] alleging that it breached their insurance contract when it rejected their claim. (Doc. 1-1 at 6-7.) Based on the submissions of the parties, the evidence in the record, and the relevant law, the court is of the opinion that Liberty's Motion is due to be granted.

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

[2] Though Liberty was named in the Complaint and remains listed on the court's docket as "Liberty Mutual Insurance Company," it clarified in its Answer that its proper name is "Liberty Mutual Fire Insurance Company." (*See* doc. 1-1 at 10.)

# I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial.").

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Therefore, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.' " *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, the non-moving party need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)). Therefore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## II.  STATEMENT OF FACTS[3]

**The Insurance Policy**

In 2009, Liberty issued a homeowners insurance policy (the "Policy") to Karatia and Frederick Pickens, covering property located at 829 Monterey Drive, Bessemer, Alabama 35022, for the policy period of April 15, 2009, to April 15, 2010.  (Doc. 11-1 at 3.)  Among

---

[3]  As required when determining a motion for summary judgment, the court has construed the facts in the light most favorable to the Pickens, the non-moving party.  All disputed facts are resolved in their favor and all reasonable inferences arising from those facts are drawn in their favor.  *See Crawford v. Carroll*, 529 F.3d 961, 964 n.1 (11th Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

other things, the Policy contains an exclusion for water damage, which reads as follows:

     c.    **Water Damage,** meaning:
        (1)    Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
        (2)    Water which backs up through sewers or drains or which overflows from a sump; or
        (3)    Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

(Doc. 11-1 at 18.)  The Policy also excludes "[w]eather conditions" if such conditions "contribute in any way with a cause or event" that is otherwise excluded.  (*Id.*)

However, for an additional premium of $10.00, the Pickens purchased a "Back Up of Sewer and Sump Pump[4] Overflow Coverage Endorsement" (the "Endorsement"), which provides coverage under its terms up to $10,000.00.  (Doc. 11-1 at 3.)  The Endorsement effectively removes the Policy exclusion listed above dealing with sewer or drain backups and sump pump overflows.  (See *id.* at 8.)  It does not, however, remove the provisions above excluding flood and surface water or "water which exerts pressure on or seeps or leaks through a building . . . foundation . . . or other structure," (*id.* at 18), and it also specifically states that it is not flood insurance, (*id.* at 8).  It further defines "flood" in part as "the unusual and rapid accumulation of runoff of surface waters from any source."  (*Id.*)  The provisions of the Endorsement that provide coverage for sump pump overflows state that:

---

       [4]    A "sump pump" is "a pump to remove accumulations of water or other liquid from a sump pit."  Webster's Third New International Dictionary 2290 (3d ed. 1993).  A "sump pit" is defined as "a pit at the lowest point in a circulating or drainage system."  *Id.*

                4

## PERILS INSURED AGAINST - SECTION I

For an additional premium, we cover risks of direct physical loss to property described in Coverage A - Dwelling and Coverage C - Personal Property described below when caused by a peril listed below, unless the loss is excluded in this policy.

1.     Sewer Back-up, meaning only direct loss to covered property caused by effluent which backs up through sewers or drains which are a part of the "residence premises".

2.     Sump Pump Overflow, meaning only direct loss to covered property caused by water which overflows or accidentally discharges from within a sump pump, sump pump well, sump pump well discharge system, or other type system designed to remove subsurface water from the foundation area of the "residence premises."

Direct physical loss caused by water which backs up through sewers or drains due to the mechanical failure of a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area of the "residence premises" is covered.

This coverage does not apply if the loss is caused by the negligence of any insured.

. . . .

## EXCLUSIONS – SECTION I

With respect to the coverages provided by this endorsement only, the following exclusions under Section I – Exclusions are deleted:

   **Water** which backs up through sewers or drains or which overflows from a sump pump.

. . . .

## LIMIT OF LIABILITY

We will pay no more than the amount shown on the policy declarations for this coverage for any one loss caused by sewer back up or sump pump overflow as

described above.[5]

(Doc. 11-1 at 8.)

### Initial Water Damage to the Basement

On the morning of November 2009, Mr. Pickens went down to the basement of his home and discovered about a foot of water covering the floor.[6]  (Doc. 13 at 22.)  Upon discovery, he "started working on it right away," (*id.* at 26), purchased a water pump, and used that, along with a shop vac, to remove the water, (*id.* at 22-23).  In his deposition, he testified that he could not recall how long it took him to remove  the water on that particular occasion because the flooding had since happened "numerous times," but that it typically took anywhere from a few hours to two days, depending on the amount of rain.  (*Id.* at 23-24.)  He further testified that since the first incident of flooding, the basement floods during most of the "big rain[s]," (*id.* at 27), and that "when we get a good day or two of rain it happens. . . . I don't know how the water was getting in," (*id.* at 25-26).  Along the same

---

[5]  It is worth noting that though, as discussed later, the Pickens testified that their basement has been flooded several times since the first incident in 2009, (*see* doc. 12 at 34; doc. 13 at 23-24), the parties have not made an issue out of whether they suffered any more than "one loss" under the Policy.  This is likely explained by the fact that Mrs. Pickens cancelled their Policy with Liberty in early December of 2009 shortly after the first flooding incident.  (Doc. 12 at 57-58.)

[6]  Though flooding occurred several times thereafter, this was the first incident of flooding that the Pickens experienced after they purchased the home in April of 2008.  (*See* doc. 13 at 24; doc. 12 at 22.)  There is no indication that the basement had ever flooded before the Pickens moved into the house.  (Doc. 13 at 21-22.)

6

lines, Mrs. Pickens testified that whenever it rains, her husband checks the basement to be sure it has not flooded again.  (Doc. 12 at 68.)

Immediately after this first flooding incident, Mrs. Pickens called her insurance agent, filed a claim, and Liberty sent someone to the Pickens's house to investigate.  (Doc. 12 at 29-31.)  Mrs. Pickens testified that at this point, they did not have any idea what had caused the flooding in the basement.  (*Id.* at 26-29.)  However, next to the stairs descending into the basement, before reaching the basement floor, there is a "crawl space" about five feet high which contains two sump pumps.  (Doc. 12 at 24.)  There was much speculation in the Pickens's depositions that one of the sump pumps may not have been working correctly,[7] but the Pickens testified that they never discovered what caused the flooding to occur—from the Liberty investigator or otherwise.  (*Id.* at 23, 28-29, 31, 60; doc. 13 at 25, 27.)  Then, in December of 2009, the Pickens received a letter from their claim handler at Liberty denying their claim: specifically, the letter quoted portions of the Policy and noted that they had "cited backup sewer and sump pump overflow," in their claim, but that rainfall and surface water (which was not covered), rather than sump pump overflow, had caused the damage to their

---

[7]  For example, when asked if anyone had ever told him whether the sump pump was working correctly or not, Mr. Pickens testified that "[m]y wife told me – I don't know if she said it was – it didn't work or it was old or – I'm not sure what she told me."  (Doc. 13 at 33.)  Further, Mrs. Pickens testified that her husband replaced one of the sump pumps more than once (though Mr. Pickens stated that he did not in his deposition, (doc. 13 at 32)), in an attempt to remedy the problem, (doc. 12 at 43-44).

home.  (Doc. 12 at 45-46.)[8]  Later, sometime in 2010, Mrs. Pickens contacted Alabama

Foundation Specialists ("AFS") to inspect their basement in order to determine the cause of

the flooding.  (*Id.* at 34-36.)  AFS provided the Pickens with a quote for approximately

$8,000.00, and Mrs. Pickens testified that they told her (1) the sump pump was not big

enough to pump the water out, and (2) that the lining in their basement had not been properly

installed, and that "wear and tear just caused it to flood."  (*Id.* at 35-37.)[9]  Mr. Pickens

testified that AFS gave him a long list of additional damage that could occur as a result of

flooding, such as foundation and mold problems.  (Doc. 13 at 29.)

**Procedural Background**

As noted above, within a day or two of finding the water in their basement, the

Pickens filed a claim for insurance benefits under the Policy.  (Doc. 12 at 30-31.)  After

Liberty refused to pay, (*see* doc. 12 at 45-46), the Pickens filed their Complaint in Alabama

---

[8]  The court realizes that this statement may be hearsay, however, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'"  *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (citing cases).  Moreover, "[i]nadmissible material that is considered by a district court without challenge may support a summary judgment."  *Munoz v. Int'l Alliance of Theatrical Stage Emp. & Moving Picture Mach. Operators of U. S. & Can.*, 563 F.2d 205, 214 (5th Cir. 1977); *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 n.37 (11th Cir. 2012) ("[I]f evidence otherwise inadmissible provoked no timely objection, it could and, if material, should be factored into a summary judgment decision." (quoting *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (internal quotation marks omitted)).  Regardless, the court does not rely on the statement above for its decision, but has only included it for background purposes.

[9]  Again, the court realizes that this may be hearsay, and does not rely on this statement for its decision, but only for background and context.

state court on October 31, 2011,[10] alleging a breach of contract claim, (doc. 1-1 at 5, 7). The Complaint alleges that as a result of Liberty's rejection of their claim, they "have been and are currently experiencing an untenable condition." (*Id.* at 7.) It further states that an increase in the amount of rainfall "caused a rapid runoff, thus causing the [sump] pump to become ineffective." (*Id.* at 6.) Subsequently, Liberty mailed a $10,000.00 check[11] to the Pickens's attorney; however, Liberty continues to maintain that any damage done to the basement is not covered under the terms of the Policy. (Doc. 10 at 6; doc. 12 at 61-62.) On November 30, 2012, Liberty filed the Motion for Summary Judgment, (doc. 9), and Brief in Support, (doc. 10), that is currently before the court. In opposition to the Motion, the Pickens filed their Response on February 4, 2013, (doc. 15), 66 days after Liberty first filed its Motion.[12] Liberty then filed a Motion to Strike Plaintiff's Response to Motion for Summary Judgment, (doc. 16), along with a Reply to Plaintiff's Response, (doc. 17). The Pickens responded by filing a Motion for Excusable Neglect, (doc. 22), to which Liberty responded in opposition, (doc. 23).

---

[10] Liberty timely removed the lawsuit to federal court in April 2012, after the Pickens's counsel submitted a settlement demand of $158,520.00 on April 5, 2012, which raised the amount in controversy above the jurisdictional minimum. (Doc. 1; *id.* at 4; doc. 1-2 at 3.)

[11] As noted earlier, $10,000.00 is the limit under the Policy for "any one loss caused by sewer back up or sump pump overflow." (Doc. 11-1 at 3, 8.)

[12] As Liberty observes in its Motion to Strike, (doc. 16), the court's Scheduling Order, (doc. 8), was filed with an exhibit, (doc. 8-1), which gives the briefing requirements for summary judgment motions filed by either party. It states that "[t]he responsive submission of the party opposing the motion for summary judgment shall be filed not later than 21 days after the motion for summary judgment is filed." (Doc. 8-1 at 1.)

## III. DISCUSSION

In its Brief in Support of Motion for Summary Judgment, (doc. 10), Liberty makes two principal arguments in support of its position that it is not liable for breach of contract. It argues that (1) the claims should be dismissed because the Pickens are not entitled to insurance benefits under the terms of the Policy, and (2) even if they are entitled to benefits, they have no damages because the maximum amount of benefits allowed under the Policy has already been paid. (Doc. 10 at 7, 9.)  In response, the Pickens acknowledge that Liberty did pay the coverage amount of $10,000.00, but note that it did so only after this action was filed against it.  (Doc. 15 at 1.)  They make very few arguments regarding coverage under the Policy,[13] but rather, focus almost their entire argument on the fact that additional damages are due—namely, compensatory damages for mental anguish—because of Liberty's failure to pay the claim.  (*Id.* at 3-6.)

In its Reply, Liberty points out that the only real issue discussed in the Pickens's

---

[13] Specifically, the Pickens's limited arguments regarding coverage are only that Liberty has an obligation to pay all valid claims under the Policy without "unreasonable delay," (doc. 15 at 3), and that they "reasonably believed" that the Policy insured against the sort of loss incurred in this case, (*id.* at 2).  Additionally, they state that they "would have had the problem corrected rather than having the damages increase . . . .," if Liberty had paid under the Policy.  (*Id.*) However, as discussed later on, the Pickens have not made any argument explaining their alleged reasonable expectations or in what way they contend that coverage exists based on the Policy or the provisions therein, nor have they offered any evidence to that effect.  Under Alabama law, a court cannot simply create coverage where none exists based on an insured's reasonable expectations.  *See, e.g.*, *Am. Res. Ins. Co. v. H & H Stephens Const., Inc.*, 939 So. 2d 868, 879-81 (Ala. 2006) (discussing Alabama's reasonable expectations doctrine and noting that the doctrine "is not so expansive that any ambiguity in a policy will automatically justify disregarding an unambiguous [term] in the policy").

10

Response is whether mental anguish damages may be recoverable in the abstract. (Doc. 17 at 2, 5.) It also observes that the Pickens fail to present any evidence in support of either the recovery of mental anguish damages or their claim that compensation is due under the Policy.[14] (*Id.*) In addition, it responds to the Pickens's legal arguments, stating that "reasonable belief" as to what was covered is insufficient to change the meaning of the Endorsement, and again notes that Liberty has already paid the limit permitted under the Policy. (*Id.* at 4.)

## A.  Coverage under the Policy

In order to prove a breach of contract claim in Alabama, a plaintiff must meet these elements: "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Barrett v. Radjabi-Mougadam*, 39 So. 3d 95, 98 (Ala. 2009) (quoting *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)). Here, Liberty primarily disputes that element numbers (1) and (4) are met by the Pickens. However, rather than put forth affirmative evidence to negate an element of the Pickens's breach of contract claim, Liberty has drafted a summary judgment that falls under the standard set forth by the United States Supreme Court in *Celotex Corp.*

---

[14]  Liberty correctly points out that in addition to filing a late Response, the Pickens have not provided the court with *any* evidence to dispute defendant's Motion. If Liberty had not carried its initial burden, the Pickens's failure would be of no consequence. *See Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 607 (1991) ("[U]nless the movant meets its burden under Rule 56, the obligation of the opposing party does not arise even if no opposing evidentiary material is presented by the party opposing the motion."). However, assuming that Liberty has carried its summary judgment burden, without any evidence presented to the court, the Pickens will be unable to create an issue of material fact, and Liberty's Motion will be granted.

*v. Catrett*, 477 U.S. 317, 325 (1986): "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  In other words,

> *Celotex* . . . holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (1991).  Specifically, Liberty argues that there is no genuine dispute of material fact, not because it can affirmatively show that the cause of the flooding was due to a cause other than "water which overflows or accidentally discharges from within a sump pump . . . .," (doc. 11-1 at 8),[15] but because "[p]laintiffs have not presented any evidence that their sump pump suffered a mechanical failure, nor have they presented any evidence that the alleged water damage was the direct result of an overflow or accidental[] discharge from within a sump pump," (doc. 10 at 8.)  Though here, Liberty points only to deposition testimony, rather than asserting, as the defendant did in *Celotex*, that the plaintiff "ha[s] failed to identify, in answering interrogatories specifically requesting such information, any witnesses who could testify about the decedent's exposure to

---

[15]  Liberty does present some affirmative evidence through the Pickens's own testimony that the flooding was caused by "excessive rainfall," (*see* doc. 10 at 5; doc. 12 at 22, 68; doc. 13 at 25, 27), however, given that the only evidence it has offered is (1) the insurance contract and (2) the Pickens's depositions, (doc. 11-1; doc. 12; doc. 13), wherein they both claim repeatedly that they do not know what caused the flooding, the court cannot assume, absent additional evidence such as expert testimony, that the flooding was due solely to excessive rainfall, however likely it may seem.

petitioner's asbestos products," *Celotex*, 477 U.S. at 320, it has carried its burden by pointing to specific evidence demonstrating that the Pickens's cannot prove that the cause of the flooding was due to a malfunction within the sump pump. *See, e.g.*, *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006) (affirming district court's grant of summary judgment where defendant asserted plaintiff had no evidence and plaintiff submitted no evidence in response); *Ramsay v. Broward Cnty. Sheriff's Office*, 05-61959-CIV, 2007 WL 6861073, *15 (S.D. Fla. May 24, 2007) *aff'd*, 303 F. App'x 761 (11th Cir. 2008) (granting summary judgment where plaintiff had no evidence).

Here, Liberty has specifically pointed the court to several instances where the Pickens both testified that they do not know what caused the flooding of the basement, (*see* doc. 12 at 28-29, 31, 60; doc. 13 at 25-27), as well as to additional evidence suggesting possible causes for the flooding other than overflow of or malfunction of the sump pump, (*see, e.g.*, doc. 12 at 37; doc. 13 at 27.)  Once Liberty carried its burden, it was up to the Pickens to "make a sufficient showing on [this] essential element of [their] case," *Celotex*, 477 U.S. at 323, but, as already noted, the Pickens have not filed any evidence with the court.  (*See generally* doc. 15.)  Alternatively, the Pickens could have filed a motion under Federal Rule of Civil Procedure 56(d)[16] if they felt that they did not yet have sufficient facts to properly contest defendant's Motion, requesting that the court allow time for discovery.  *See* Fed. R.

---

[16]  Rule 56(d) is entitled "When Facts Are Unavailable to the Nonmovant," and states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery."

Civ. P. 56(d)(2).  Further, even considering the entire record (which is made up of materials produced only by defendant)[17] in the light most favorable to the Pickens as the court is required to do on a motion for summary judgment, *see Hinson v. Clinch Cnty., Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000), the most that any of the evidence produced by defendant shows in the Pickens's favor is that the sump pump "basically wasn't big enough to . . . pump the water to keep it from flooding," (doc. 12 at 37).  But even aside from the fact that this statement is hearsay (as noted earlier), it cannot create an issue of material fact, given that there must be evidence that water *overflowed from* the sump pump or accidentally discharged from *within* it, or that it had a "mechanical failure."  (*See* doc. 11-1 at 8 (emphasis added).)  Consequently, the court is satisfied that Liberty has met its burden as to the issue of coverage: namely, it has demonstrated that the Pickens do not have sufficient evidence to prove causation—and therefore coverage—at trial.  *See Clark*, 929 F.2d at 608 ("To . . . require[] a trial when it [i]s clear from the materials in the record that [the plaintiff can] not prove her claim [is] a waste of time and resources . . . .").

Certainly, as the Pickens argue, Liberty "has an obligation to pay all valid claims under the policy and to do so without unreasonable delay . . . ." (Doc. 15 at 3) (quoting *United Ins. Co. of Am. v. Cope*, 630 So. 2d 407, 411 (Ala. 1993)).)  However, Liberty has no

---

[17]  The court is entitled—but not required—to consider the entire record on a motion for summary judgment.  *See Clark v. Northview Health Servs., LLC*, CIV.A. 11-0664-WS-N, 2013 WL 790850, *2, *2 n.1 (S.D. Ala. Mar. 4, 2013) (noting that there is no burden on the court to review evidence submitted by a party that is not specifically referenced, but that it has discretion to consider all of the evidence filed).

obligation to pay where the Pickens cannot produce evidence to create an issue of material fact as to whether the flooding was covered under the terms of the Policy.  *See, e.g.*, *Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 571 (Ala. 1991) (affirming trial court's decision that the defendant had "no obligation to pay the claim for th[e] loss" where there was no coverage under the policy).  Moreover, as addressed in the next Section, even if the Pickens were covered under the Policy, the court also agrees with Liberty that it is not liable for breach of contract because it has already paid the maximum amount of benefits allowed under the Policy.  (*See* doc. 10 at 9.)

### B.   Damages for Mental Anguish

As noted earlier, Liberty argues that the Pickens do not have any damages, a necessary element to succeed on a contract claim, *see Barrett v. Radjabi-Mougadam*, 39 So. 3d 95, 98 (Ala. 2009), because it has already paid the maximum coverage of $10,000.00 under the Policy, (doc. 10 at 9; doc. 17 at 4).[18]  In Response, the Pickens agree that Liberty tendered payment of $10,000.00, (doc. 15 at 1), but argue at length that compensatory damages for mental anguish are nevertheless still due because of Liberty's failure to pay their claim,[19] (*id.*

---

[18]  In support of this, Liberty has presented evidence that the limit under the Policy is $10,000.00, (*see* doc. 11-1 at 3), and (2) that it tendered—and that the Pickens received—a check for $10,000.00, (*see* doc. 12 at 61-62).

[19]  The court notes, however, that the exact argument made by the Pickens is not clear, given that their Response contains no application of the law to the facts.  (*See* doc. 15 at 3-6.) They have provided the court with an entirely abstract legal argument which establishes that mental anguish damages are, on occasion, permitted in breach of contract cases in Alabama, without explaining why they should be recoverable in this case.  (*See id.*)  Liberty has also taken note of this deficiency in the Pickens's Response.  (Doc. 17 at 5 ("Plaintiffs only make general

at 3-6).  However, they also admit that it is proper to grant summary judgment when a plaintiff has already been fully compensated by a defendant for the available damages on a breach of contract claim.  (Doc. 15 at 4) (citing *Burch v. Lake Forest Prop. Owners' Ass'n*, 565 So. 2d 611, 612 (Ala. 1990)).)  Because the Pickens have presented no evidence in support of their mental damages claim, the court agrees with Liberty.[20]

As is required on summary judgment, Liberty met its burden by providing the court with evidence—to which it specifically cites in its brief, (*see* doc. 10 at 9)—showing that it paid the Pickens the limit permitted under the Policy (i.e., the maximum amount that could have been due if the flooding were a covered incident).  (*See* doc. 12 at 61.); *see also United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) ("[T]he moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.").  Consequently, the burden shifted to the Pickens to produce evidence demonstrating that there is an issue of material fact as to damages.  Specifically,

statements of law without actually applying the law to the facts of the case.").)

[20]  The result might be different had the Pickens made a claim for mental anguish damages in their Complaint sufficient to put Liberty on notice of the need to move for summary judgment on this specific matter.  (*See* doc. 1-1 at 7 (claiming damages for "loss of [plaintiffs'] good name and reputation" and "damages to their basement").  Though they did briefly mention mental anguish damages in a settlement letter, this was a general reference that cannot operate as a substitute for a claim made in the Complaint.  (*See* doc. 1-2 at 3.)  As it now stands, Liberty carried its burden in showing that the Pickens have been fully compensated under the Policy, and by arguing generally that the Pickens "cannot show that . . . they have been damaged."  (Doc. 10 at 9.)  This was enough to shift the burden to the Pickens to present evidence of damages sufficient to withstand summary judgment.

they needed to point the court to evidence showing that they have *any* damages, regardless of the type, which they have not done here.  *See Coats & Clark, Inc.*, 929 F.2d at 608 ("Only when [the movant's] burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."). Moreover, as noted earlier, the Pickens have not even attempted to provide the court with an argument as to why mental anguish damages should apply in *this* scenario; they simply provide the court with Alabama law on mental anguish damages in contract cases, completely divorced from any context.  (*See* doc. 15 at 3-6.)  Accordingly, the court agrees with Liberty that the Pickens "have failed to present . . . evidence proving that they are entitled to [mental anguish] damages in this instance." (Doc. 17 at 5.)  The court cannot simply assume that there is an issue of material fact as to whether the Pickens suffered mental anguish.  Rather, there must at least be *some* evidence in a plaintiff's favor at the summary judgment stage so that the court is convinced that at trial, a plaintiff seeking to recover mental anguish damages may be able to present evidence that "he, in fact, suffered emotional distress." *Ex parte Grand Manor, Inc.*, 778 So. 2d 173, 179 (Ala. 2000) (citing *AALAR, Ltd., Inc. v. Francis*, 716 So. 2d 1141, 1147 (Ala. 1998)).  Because the Pickens have failed to show that there is a genuine issue of fact for trial on the issue of mental anguish damages, the court does not need to determine whether mental anguish damages may generally be recoverable in this type of contract case.  Therefore, Liberty is entitled to judgment as a matter of law on the issue of mental anguish damages.

17

### C.    Motion to Strike

In its Motion to Strike Plaintiff's Response, Liberty argues that the Pickens did not file their Response within the 21-day time period under the court's Scheduling Order and instead filed it 45 days late.  (Doc. 16 at 2.)  Liberty further argues that the Pickens's Response failed to comply with the Summary Judgment Requirements in several other ways, such as by containing incorrect formatting and lacking separately numbered paragraphs and specific references to evidentiary submissions.  (*Id.* at 3.)  In response, as noted earlier, the Pickens filed a Motion for Excusable Neglect, informing the court that Plaintiffs' Counsel "experienced difficulty in outsourcing duties to be performed."  (Doc. 22 at 4.)  Defendant's Response in Opposition to Plaintiff's Motion for Excusable Neglect asks the court to deny plaintiffs' Motion and to "hold [them] accountable for their . . . non-compliant pleadings." (Doc. 23 at 4.)

However, given that defendant's Motion for Summary Judgment has been resolved on the merits, the court chooses not to address these additional arguments at this time.  *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003) (discussing preference for resolution on the merits when possible); *Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243, 249 (2d Cir. 1996) (stating that the court "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits"); *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980) (observing strong policy "favoring the resolution of genuine disputes on their merits"); *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d

18

2, 4 (D.D.C. 2004) ("In recognition of the settled policies disfavoring motions to strike and favoring adjudications on the merits, the court denies the defendants' motions to strike . . . .").

## IV. CONCLUSION

For the foregoing reasons, the court finds that Defendant Liberty Mutual Insurance Company's Motion for Summary Judgment, (doc. 9), is due to be granted with respect to Karatia and Frederick Pickens's breach of contract claim.  An order granting Liberty's Motion will be entered contemporaneously with this Opinion.

**DONE**, this the 15th day of August, 2013.

*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

19